# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WASTE MANAGEMENT OF LOUISIANA, L.L.C.**     **CIVIL ACTION**

**VERSUS**                                       **NO. 13-6764**

**JEFFERSON PARISH**                             **SECTION: "G"(5)**

## ORDER AND REASONS

This litigation involves a landfill and waste disposal contract between Plaintiff Waste Management of Louisiana, L.L.C. ("Waste Management") and Defendant Jefferson Parish. Before the Court is Jefferson Parish's "Motion to Dismiss,"[1] wherein Jefferson Parish requests that the Court dismiss this case for *forum non conveniens*, or, alternatively, for failure to state a claim upon which relief can be granted. Having considered the pending motion, the memoranda in support, the memorandum in opposition, the statements made at oral argument, the complaint, and the applicable law, the Court will deny the motion.

## I. Background

According to the complaint, on October 9, 1996, Jefferson Parish entered into a "Time Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site" (the "Landfill Time Contract") with John Sexton Sand and Gravel Corp ("Sexton").[2] In 1998, with the approval of Jefferson Parish, Sexton sold, transferred, and assigned the Landfill Time Contract to Waste Management.[3]

---

[1]  Rec. Doc. 8.

[2]  Rec. Doc. 1 at ¶ 7.

[3]  *Id.*

Pursuant to the Landfill Time Contract, Waste Management managed the Jefferson Parish Sanitary Landfill (the "Landfill") and the disposal of all solid waste and sewage sludge generated in Jefferson Parish.[4] According the complaint, the Landfill was divided into Phases I, II, IIIA, and IIIB.[5] Under the terms of the contract, Waste Management received an initial lump sum from Jefferson Parish as well as a "tipping fee" for all wastes disposed of in Phases IIIA and IIIB. In turn, Waste Management was obligated to pay a royalty on certain wastes to Jefferson Parish.[6] Waste Management alleges that the term of the Landfill Time Contract was to end when Phases IIIA and IIIB were filled and closed.[7]

According to Waste Management, on or about May 17, 2012, while the Landfill Time Contract was still in effect, Jefferson Parish and IESI Landfill Corporation ("IESI") entered into a "Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site" (the "IESI Contract").[8] The IESI Contract called for IESI to develop a new Phase IVA of the Landfill, located between and partially on top of Phases IIIA and IIIB.[9] Waste Management claims that IESI's development of Phase IVA interfered with its ongoing operations in Phase IIIB.[10]

---

[4] *Id.* at ¶ 8.

[5] *Id.*

[6] *Id.* at ¶ 10.

[7] *Id.* at ¶ 9.

[8] *Id.* at ¶ 12.

[9] *Id.* at ¶ 13

[10] *Id.*

Further, Waste Management asserts that Jefferson Parish forced it to relocate a haul road to facilitate IESI's development of Phase IVA.[11]

Waste Management claims that in March 2013, at Jefferson Parish's request, Waste Management agreed to end its Landfill operations by May 1, 2013, even though Phase IIIB had yet to be filled and closed.[12] According to the complaint, Waste Management transitioned Landfill operations to IESI on April 30, 2013.[13] Following the transition, however, Waste Management alleges that it continued to work on the installation of a final cap system, "consisting of soil and synthetic layers/liners," that would close Phase IIIB.[14] According to Waste Management, its work on the final cap system was complicated by Jefferson Parish's failure to collect and control landfill gases.[15]

On August 21, 2013, Waste Management delivered a "Notice of Termination" to Jefferson Parish, purporting to terminate the Landfill Time Contract, effective August 31, 2013.[16] Waste Management claims that it terminated the contract due to Jefferson Parish's failure to pay certain invoices.[17] On August 31, 2013, Waste Management ceased work on the Landfill; according to the

---

[11] *Id.* at ¶ 14.

[12] *Id.* at ¶ 15.

[13] *Id.*

[14] *Id.*

[15] *Id.* at ¶¶ 23–24.

[16] *Id.* at ¶ 16.

[17] *Id.*

complaint, the final cap system "was largely complete" at this time.[18] According to Waste Management, it assigned the performance obligations of the final capping work to Jefferson Parish.[19]

## B. Procedural Background

On December 20, 2013, Waste Management filed suit against Jefferson Parish in the United States District Court for the Eastern District of Louisiana.[20] In its complaint, Waste Management asserts that Jefferson Parish owes $461,108.60 in unpaid invoices.[21] Additionally, Waste Management claims that Jefferson Parish interfered with Waste Management's performance under the Landfill Time Contract and caused Waste Management to perform additional services.[22] Finally, Waste Management alleges that it performed "emergency hurricane debris collection and management services for Jefferson Parish," for which it has never been paid.[23] Waste Management brings claims for breach of contract, failure to pay, unjust enrichment, quantum meruit, detrimental reliance, and attorneys' fees.[24]

On January 22, 2014, Jefferson Parish filed the pending "Motion to Dismiss."[25] On February 11, 2014, Waste Management filed a memorandum in opposition.[26] With leave of the Court,

---

[18] *Id.*

[19] *Id.* at ¶ 17.

[20] *See* Rec. Doc. 1.

[21] *Id.* at ¶ 18.

[22] *Id.* ¶ 19.

[23] *Id.* at ¶ 27.

[24] *Id.* at ¶¶ 28–41.

[25] Rec. Doc. 8.

[26] Rec. Doc. 9.

Jefferson Parish filed a reply on February 14, 2014.[27] The Court heard oral argument on the motion to dismiss on February 19, 2014.[28]

## II. Parties' Arguments

### A.    Jefferson Parish's Arguments in Support

Jefferson Parish "moves the Court to dismiss this case for *forum non conveniens*, or, in the alternative, moves the Court to dismiss this case pursuant to Fed. R. Civ. Proc. 12(b)(6)."[29] According to Jefferson Parish, "[t]his case belongs in the 24th Judicial District for the Parish of Jefferson, State of Louisiana."[30] Jefferson Parish contends that the Landfill Time Contract "contains a valid forum-selection clause,"[31] which states:

> Jurisdiction: This Agreement and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the State of Louisiana and the parties hereto submit to the jurisdiction of the 24th Judicial District for the Parish of Jefferson, State of Louisiana. The parties hereby waiving [sic] any and all plea[s] of lack of jurisdiction or improper venue.[32]

Jefferson Parish asserts that "[t]his valid forum-selection clause in the Landfill Time Contract, together with the recent ruling by the United States Supreme Court creating a new uniform standard to enforce such clauses, requires this Court to grant Defendant's Motion . . . ."[33]

---

[27] Rec. Doc. 14.

[28] Rec. Doc. 16.

[29] Rec. Doc. 8 at p. 1.

[30] Rec. Doc. 8-1 at p. 1.

[31] *Id.* at p. 2.

[32] *Id.* (second alteration in original).

[33] *Id.*

In support of its position, Jefferson Parish cites the Supreme Court's December 2013 ruling in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*.[34] According to Jefferson Parish, *Atlantic Marine* holds "that in contract disputes involving a forum-selection clause, a motion for transfer under 28 U.S.C. § 1404(a) is the proper vehicle for the enforcement of a clause pointing to a federal forum and that a motion to dismiss under the doctrine of *forum non conveniens* is the proper vehicle for enforcement of a clause pointing to a nonfederal forum."[35] Jefferson Parish maintains that "the Supreme Court further held that because both § 1404(a) and *forum non conveniens* entail the same balancing-of-interests standards, 'courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.'"[36] Jefferson Parish explains that typically a court evaluating a motion to transfer or a motion to dismiss "considers both the convenience of the parties and various public-interest considerations."[37] However, Jefferson Parish contends that under *Atlantic Marine*, "this changes when the parties' contract contains a valid forum-selection clause reflecting their agreement as to the most proper forum because the 'enforcement of [] valid forum-section clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'"[38] According to Jefferson Parish, *Atlantic Marine* held that in ruling on a motion to transfer venue under 28 U.S.C. § 1404 premised on a valid forum-selection clause,

---

[34]  134 S. Ct. 568 (2013).

[35]  Rec. Doc. 8-1 at pp. 2–3.

[36]  *Id.* at p. 6.

[37]  *Id.* at p. 6.

[38]  *Id.* (quoting *Atlantic Marine*, 134 S. Ct. at 581).

. . . a district court must make three adjustments to their [sic] typical analysis: the court (1) must give no weight to the plaintiff's choice of forum; (2) should not consider arguments about the parties' private interests, which are deemed reflected in the agreed-upon forum, and should look only to the public-interest factors that "will not be common" and "will rarely defeat a transfer motion" and (3) should not transfer the case with the original venue's choice-of-law rules, as there is no need to prevent a defendant from invoking § 1404(a) to gain the benefits of the law of another jurisdiction where the plaintiff has ignored an agreed-upon forum in filing suit.[39]

After discussing *Atlantic Marine*, Jefferson Parish turns to the doctrine of *forum non conveniens* more generally. Quoting the Fifth Circuit's decision in *DTEX, LLC v. BBVA Bancomer*,[40] Jefferson Parish asserts that "[t]he doctrine of *forum non conveniens* proceeds from the premise that in some[41] circumstance [sic] federal courts can relinquish their jurisdiction in favor of another forum."[42] According to Jefferson Parish, "[s]uch dismissal requires the initial determination that an alternative and adequate forum exists for adjudication of the parties' claims."[43] "If it does, 'the court must determine which forum is best suited to the litigation,' a task accomplished through the balancing of private- and public-interest factors."[44]

Applying this standard, Jefferson Parish first asserts that "[i]n this matter, it cannot be seriously disputed that even absent the forum-selection clause contained in the Landfill Time Contract, that the 24th JDC is an adequate forum for adjudication of the parties' claims for work

---

[39] *Id.* at p. 7.

[40] 508 F.3d 785 (5th Cir. 2007).

[41] The Court notes that Jefferson Parish misquotes *DTEX*. The opinion in *DTEX* states that in "rare" circumstances—not "some" circumstances—federal courts can relinquish jurisdiction. *DTEX*, 508 F.3d at 794.

[42] Rec. Doc. 8-1 at p. 8 (quoting *DTEX*, 508 F.3d at 794) (internal quotation marks omitted).

[43] *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)).

[44] *Id.* (quoting *DTEX*, 508 F.3d at 794).

performed on behalf of Jefferson Parish, within the physical boundaries of Jefferson Parish, pursuant to a contract signed in Jefferson Parish and following a resolution authorizing [the] same by the Jefferson Parish Council."[45] Further, Jefferson Parish maintains that "Waste Management has consented to place itself under the jurisdiction of the 24th JDC under the plain language of the forum-selection clause in the Landfill Time Contract."[46] Thus, Jefferson Parish concludes that "the entire case and all parties can come within the jurisdiction of the 24th JDC, and the parties will neither be deprived of any remedies nor treated unfairly in that forum."[47]

With respect to the private-interest factors, Jefferson Parish states that the private-interest factors to be considered include:

> (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of the premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . [including] enforceability of judgment; and whether the plaintiff has sought to "vex," "harass," or "oppress" the defendant.[48]

Jefferson Parish argues that pursuant to *Atlantic Marine*, "arguments concerning the parties' private-interest factors should not be considered,"[49] and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum."[50]

Next, Jefferson Parish identifies the public-interest factors as:

---

[45] *Id.* at pp. 8–9.

[46] *Id.* at p. 9.

[47] *Id.*

[48] *Id.* (alterations in original) (quoting *DTEX*, 508 F.3d at 794).

[49] *Id.* at p. 10.

[50] *Id.* (quoting *Atlantic Marine*, 134 S. Ct. at 582).

> (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized disputes resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.[51]

Jefferson Parish contends that "in matters involving a forum-selection clause, the Supreme Court shifts the burden onto the party seeking to avoid its contractual obligation by filing suit in a forum other than the one specified in the forum-selection clause to show that public-interest factors overwhelming disfavor adjudication in the preselected forum."[52] According to Jefferson Parish:

> In this case, it is axiomatic that Waste Management will be unable to carry its burden to show that public-interest factors overwhelming disfavor adjudication of this matter in the preselected forum, the 24th JDC. In fact, the public-interest factors are either neutral between this Honorable Court sitting in the Eastern District of Louisiana or the 24th JDC adjudicating this matter, or they are in favor of adjudication in the 24th JDC.[53]

Finally, Jefferson Parish argues "[i]n the alternative, if this Honorable Court is disinclined to dismiss the Complaint for *forum non conveniens*, this matter should still be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6)."[54] Jefferson Parish acknowledges that "[i]n *Atlantic Marine*, the Supreme Court declined to consider whether a defendant in a breach-of-contract action could obtain dismissal under Rule 12(b)(6) if the plaintiff filed suit in a district other than the one specified in a forum-selection clause because the issue was not raised in the lower court but only in an amicus brief on appeal."[55] However, Jefferson Parish raises the argument "out of an abundance of

---

[51] *Id.* at pp. 9–10.

[52] *Id.* at p. 10.

[53] *Id.* at p. 11.

[54] *Id.*

[55] *Id.* (citing *Atlantic Marine*, 134 S. Ct. at 580).

caution."[56] According to Jefferson Parish, "dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6) because the Plaintiffs' [sic] Complaint, based on and incorporating by reference the Landfill Time Contract, taken as true, contains an affirmative defense on its face via the forum-selection clause, and therefore fails to state a claim upon which relief can be granted."[57]

## B.    Waste Management's Arguments in Opposition

In opposition to Jefferson Parish's motion to dismiss, Waste Management argues that "the clear language of the clause at issue, as well as incontrovertible case law, reveals that this 'forum selection clause' did not mandate selection of the 24th Judicial District Court as the exclusive forum for disputes between the parties."[58] Rather, Waste Management maintains, "though establishing the parties' consent to the jurisdiction of the 24th Judicial District Court, this clause permits the selection of a forum other than the 24th Judicial District Court."[59] According to Waste Management, "[n]o different result is dictated by the recent decision of *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, relied upon exclusively by Jefferson Parish, because that case decided the procedure to enforce a forum selection clause which mandated a forum to the exclusion of others."[60]

First, Waste Management contends that "[t]he 'forum selection clause' at issue here is permissive, not mandatory or exclusive."[61] According to Waste Management:

---

[56] *Id.* at p. 12.

[57] *Id.* at p. 13.

[58] Rec. Doc. 9 at p. 2.

[59] *Id.*

[60] *Id.*

[61] *Id.*

Enforcement of a forum selection clause to require the filing of suit in a particular forum is necessarily dependent on whether the parties have contracted to establish an exclusive forum for the litigation of disputes. "Permissive" forum selection clauses allow a suit to proceed in the named forum, but do not mandate that the named forum be the exclusive forum for the suit. Stated differently, permissive forum selection clauses, often described as "consent to jurisdiction clauses," authorize venue in a designated forum or forums but do not prohibit litigation elsewhere.[62]

Waste Management maintains that "[t]he plain language of the clause in the Landfill Time Contract does not designate the 24th Judicial District Court, Jefferson Parish, Louisiana, as the exclusive forum in which disputes between the parties must be litigated."[63] Waste Management asserts that the clause is "merely permissive": "[w]hile the parties consent to the jurisdiction of the 24th Judicial District Court, there is no mandate that jurisdiction in the 24th Judicial District Court is exclusive, and there is no waiver of a right to have an action heard in another forum."[64]

In support of its position that the clause at issue is permissive, Waste Management cites the Fifth Circuit's decisions in *City of New Orleans v. Municipal Administrative Services, Inc.*[65] and *Keaty v. Freeport Indonesia, Inc.*[66] According to Waste Management, in *City of New Orleans*, the Fifth Circuit analyzed a clause that provided: "The undersigned Contractor does further hereby consent and yield to the jurisdiction of the State Civil Courts of the Parish of Orleans and does hereby formally waive any pleas of jurisdiction on account of the residence elsewhere of the

---

[62] *Id.* at pp. 2–3.

[63] *Id.* at p. 3.

[64] *Id.* at pp. 3–4.

[65] 376 F.3d 501 (5th Cir. 2004).

[66] 503 F.2d 955 (5th Cir. 1974).

undersigned Contractor."[67] According to Waste Management, the Fifth Circuit explained that "[a] party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another."[68] Waste Management maintains that the Fifth Circuit "found that the clause at issue did not establish state courts of the Parish of Orleans as the exclusive venue or jurisdiction," and thus affirmed the district court's denial of a motion to remand.[69] Similarly, in *Keaty v. Freeport Indonesia, Inc.*, the Fifth Circuit addressed a clause that stated: "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York."[70] According to Waste Management, in *Keaty* "[t]he Fifth Circuit held that the clause was not mandatory, but permissive," and thus the court reversed the district court's dismissal for want of jurisdiction.[71]

Second, Waste Management contends that *Atlantic Marine* "is inapposite" as it addressed "the question of the proper means of enforcing a mandatory forum selection clause under federal law."[72] "While *Atlantic Marine* sheds light on the proper procedural mechanism to employ to dismiss or transfer a matter subject to a forum selection clause which mandates a particular forum," Waste Management asserts that "it does not apply to the instant matter because there has been no selection of the 24th Judicial District Court as the exclusive forum for the litigation of disputes

---

[67] Rec. Doc. 9 at p. 4 (quoting *City of New Orleans*, 376 F.3d at 504) (internal quotation marks omitted).

[68] *Id.* (quoting *City of New Orleans*, 376 F.3d at 504) (internal quotation marks omitted).

[69] *Id.*

[70] *Id.* at p. 5 (quoting *Keaty*, 503 F.2d at 956) (internal quotation marks omitted).

[71] *Id.*

[72] *Id.* at p. 7.

between the parties."[73] Waste Management maintains that "the clause at issue here is not a 'valid forum selection clause, which represents the parties' agreement as to the most proper forum,' as contemplated by *Atlantic Marine*."[74] According to Waste Management, "by filing its suit in the Eastern District of Louisiana, plaintiff Waste Management has not defied or flouted any contractual obligation to file suit in the 24th Judicial Court because no such obligation exists."[75]

Further, citing the Supreme Court's decision in *American Dredging Co. v. Miller*,[76] Waste Management argues that "absent a mandatory forum selection clause, federal courts have the power to dismiss damages actions under the common law *forum non conveniens* doctrine only 'in causes where the alternative forum is abroad.'"[77] According to Waste Management, "[t]he Court in *Atlantic Marine* did not change the longstanding rule set forth in *American Dredging* that, absent a mandatory forum selection clause, the *forum non conveniens* doctrine is only appropriate when the alternative forum is abroad."[78]

Finally, Waste Management asserts that it "did not waive its right to bring suit in this court and the Motion to Dismiss under F.R.C.P. Rule 12(b)(6) should be denied."[79]

## C.    Jefferson Parish's Arguments in Further Support

In its reply memorandum, Jefferson Parish first asserts that Waste Management's arguments

---

[73]   *Id.* at p. 8.

[74]   *Id.*

[75]    *Id.* at p. 9.

[76]   510 U.S. 443 (1994).

[77]   Rec. Doc. 9 at p. 10 (quoting *Am. Dredging*, 510 U.S. at 449 n.2).

[78]   *Id.*

[79]   *Id.* at p. 11.

"confuse jurisdiction and venue in its analysis of the forum selection clause at bar."[80] Specifically, Jefferson Parish explains:

> In support of its position, Plaintiff cites several cases involving the question of a forum-selection clauses [sic] in the context of removal actions. Removal is governed by statute, 28 U.S.C. § 1441 *et seq* and involves purely jurisdictional questions; that is, removal requires an independent ground for subject-matter jurisdiction such as diversity jurisdiction or federal question jurisdiction. It is only in the 28 U.S.C. § 1441 removal context that courts examine the issue of whether a forum selection clause is "permissive" or mandatory" in order to determine whether a party has specifically given a "clear and unequivocal waiver of that right" of removal.[81]

Thus, Jefferson Parish asserts that "[e]ven assuming, *arguendo*, that the forum-selection clause at bar is 'permissive,' such a question is not relevant to the matter at hand because this is not a removal action and no one is contending that Plaintiff waived its removal rights (a jurisdictional question)."[82]

Second, Jefferson Parish argues that Waste Management's arguments "directly contravene the recent ruling by the United States Supreme Court in *Atlantic Marine Construction Company, Inc. v. U.S. District Court for the Western District of Texas*, 571 U.S. __, 2013 WL 6231157 (U.S. Dec. 3, 2013), which controls in this matter."[83] According to Jefferson Parish, "Plaintiff erroneously characterizes the Supreme Court's decision in *Atlantic Marine* as one dealing with the enforcement of a 'mandatory' forum-selection clause."[84] "In fact," Jefferson Parish maintains, "the United States Supreme Court has never distinguished between 'permissive' and 'mandatory' forum-selection

---

[80] Rec. Doc. 14 at p. 1.

[81] *Id.* at p. 2.

[82] *Id.* at p. 3.

[83] *Id.* at p. 1.

[84] *Id.* at p. 4.

clauses in any of its cases regarding enforcement of the same."[85] Jefferson Parish notes that Waste Management cites *Atlantic Marine*'s statement that "[o]ur analysis presupposes a contractually <u>valid</u> forum-selection clause."[86] According to Jefferson Parish, "instead of addressing the validity of the forum-selection clause at issue in this case, Plaintiff improperly, and completely unsupported by law, extrapolates its misplaced 'permissive' v. 'mandatory' analysis to equate 'permissive' with 'invalid.'"[87] Rather, Jefferson Parish maintains that "the proper analysis of whether a forum-selection clause is valid was set-forth by the Supreme Court in *The Bremen*," which according to Jefferson Parish "holds that a contractual forum-selection clause is '*prima facia* valid and should be enforced absent a clear showing that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching.'"[88] Jefferson Parish asserts that the forum-selection in this case "was a freely-negotiated agreement between sophisticated parties, which was unaffected by fraud, undue influence or overweening bargaining power, and should be given full effect."[89]

Finally, Jefferson Parish avers that Waste Management "misstates the doctrine of *forum non conveniens*."[90] Specifically, Jefferson Parish takes issue with Waste Management's statement that

---

[85] *Id.* (citing *Atlantic Marine*, 134 S. Ct. 568; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

[86] *Id.* (emphasis and alteration in original) (quoting *Atlantic Marine*, 134 S.Ct. 581 n.5) (internal quotation marks omitted).

[87] *Id.*

[88] *Id.* at pp. 4–5 (quoting *M/S Bremen*, 407 U.S. at 5).

[89] *Id.* at p. 6.

[90] *Id.* at p. 1.

"the doctrine of *forum non conveniens* is 'only appropriate when the alternative forum is abroad.'"[91] According to Jefferson Parish, "this assertion directly contravenes the Supreme Court's holding in *Atlantic Marine*."[92] Jefferson Parish also contends that "it is black letter law that a 'foreign' jurisdiction for the purposes of *forum non conveniens* as applied by federal courts means either a state court *or* a court in a foreign country, not only a court 'abroad,'" although Jefferson Parish cites no authority for this proposition.[93] Further, Jefferson Parish distinguishes *American Dredging Co. v. Miller*, a case cited by Waste Management, saying "*American Dredging* involved an appeal to the United States Supreme Court by a Jones Act seaman from a Louisiana state supreme court's decision holding that La. Code Civ. Proc. Ann. art. 123(C), rendered the doctrine of *forum non conveniens* unavailable in Jones Act and maritime cases brought in Louisiana courts."[94] "Accordingly," Jefferson maintains, "the *American Dredging* case has no application in the matter at hand."[95]

### III. Law and Analysis

As evident from the discussion above, the parties dispute whether the Supreme Court's recent decision in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas* applies to the *forum non conveniens* analysis in this case. Jefferson Parish maintains that *Atlantic Marine* controls whenever the parties have negotiated a forum selection clause absent a clear showing that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching. Waste Management, on the other

---

[91] *Id.* at p. 7.

[92] *Id.* at p. 8.

[93] *Id.* (emphasis in original).

[94] *Id.*

[95] *Id.*

hand, contends that because the parties agreed to a permissive forum selection clause, *Atlantic Marine* does not apply, and that without a mandatory forum selection clause, dismissal pursuant to *forum non conveniens* is unwarranted.

To assess whether *Atlantic Marine* controls, it is important to place that decision within the broader development of the doctrine of *forum non conveniens*. In the discussion that follows, the Court first looks at *forum non conveniens* generally, and it then discusses the *Atlantic Marine* decision. Finally, it examines whether the "mandatory" versus "permissive" distinction impacts the applicability of *Atlantic Marine*.

## A.    *Forum Non Conveniens*

The "ancient doctrine"[96] of *forum non conveniens* serves as "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined."[97] Pursuant to the doctrine, "a federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems."[98] Generally, courts use a four-part inquiry in evaluating whether *forum non conveniens* warrants dismissal of an action:

---

[96] 14D Charles Alan Wright, *et al*, Federal Practice and Procedure § 3828 (4th ed.).

[97] *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)) (internal quotation marks omitted).

[98] *Id.* (quoting *Am. Dredging*, 510 U.S. at 447–48) (internal quotation marks and alterations omitted).

First, the district court must assess whether an alternative forum is available. An alternative forum is available if the entire case and all parties can come within the jurisdiction of that forum. Second, the district court must decide if the alternative forum is adequate. An alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. If the district court decides that an alternative forum is both available and adequate, it next must weigh various private interest factors. If consideration of these private interest factors counsels against dismissal, the district court moves to the fourth consideration in the analysis. At this stage, the district court must weigh numerous public interest factors. If these factors weigh in the moving party's favor, the district court may dismiss the case.[99]

In this analysis, "the 'availability and adequacy' of the alternative forum are 'threshold requirements' that must be established before the private interest factors and public interest factors are considered."[100]   At the third step of the *forum nonconveniens* inquiry, the "private interest" factors to be evaluated include:

(i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of the premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive, enforceability of judgment; and whether the plaintiff has sought to "vex," "harass," or "oppress" the defendant.[101]

Finally, the "public interest" factors include:

(i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in

---

[99] *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 279–80 (5th Cir. 2002) (internal citations and quotation marks omitted).

[100] *Cotemar S.A. De C.V. v. Hornbeck Offshore Serv.*, —F. App'x—, 2014 WL 2111190, at *2, (5th Cir. May 21, 2014).

[101] *DTEX v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (alterations omitted).

application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.[102]

The defendant typically has the burden of persuading the court that dismissal on the ground of *forum non conveniens* is appropriate.[103] "Ordinarily a strong favorable presumption is applied to the plaintiff's choice of forum,"[104] and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[105]

In its 2007 decision in *Sinochem International Company, Ltd. v. Malaysia International Shipping Corp.*, the Supreme Court observed that the scope of *forum non conveniens* has been circumscribed since the doctrine's origin. According to the Court in *Sinochem*, "[t]he common-law doctrine of *forum non conveniens* 'has continuing application in federal courts only in cases where the alternative forum is abroad,' and perhaps in the rare instances where a state or territorial court serves litigational convenience best."[106] "For the federal court system," the Court explained, "Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is more convenient."[107] Thus, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[108] With respect to

---

[102]   *Id.* (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999)).

[103]   *Id.*

[104]   *Id.*

[105]   *Id.* (quoting *Gulf Oil*, 330 U.S. at 508) (internal quotation marks omitted).

[106]   *Sinochem*, 549 U.S. at 430 (citations and alterations omitted) (quoting *Am. Dredging*, 510 U.S. at 449 n.2).

[107]   *Id.*

[108]   28 U.S.C. § 1404(a).

situations where the alternative forum is a state court, *Sinochem* suggested that *forum non conveniens* may "perhaps" be available "in the rare instances where a state or territorial court serves litigational convenience best."[109] *Sinochem*, however, does not explain what these "rare instances" are.[110]

## B. *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*

On December 13, 2013, the Supreme Court issued its opinion in *Atlantic Marine*, addressing the analysis lower courts should utilize in assessing motions to transfer venue under 28 U.S.C. § 1404 or motions to dismiss pursuant to the doctrine of *forum non conveniens*. In *Atlantic Marine,* a payment dispute arose between a general contractor and subcontractor working on a construction project at Fort Hood in Texas.[111] The contract between the parties contained a forum selection clause, providing that all disputes between the parties "shall be litigated in the Circuit Court of the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk, Division."[112] When the plaintiff-subcontractor filed suit in the United States District Court for the Western District of Texas, the defendant-general contractor moved to dismiss the case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or to transfer venue pursuant to 28 U.S.C. § 1406(a), which states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

---

[109] *Id.*; *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) ("[T]o the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in 'cases where the alternative forum is abroad.'" (quoting *Am. Dredging*, 510 U.S. at 449 n.2)).

[110] The Court has not located any case explaining the "rare instances" referenced in *Sinochem*.

[111] *Atlantic Marine Constr. Co., Inc v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 575 (2013).

[112] *Id.*

transfer such case to any district or division in which it could have been brought."[113] The district court denied both motions, and the Fifth Circuit denied defendant's petition for a writ of mandamus.[114]

The Supreme Court reversed. It held that a forum selection clause does not render a different venue "wrong" or "improper" within the meaning of Rule 12(b)(3) or 28 U.S.C. § 1406;[115] rather, a forum-selection clause pointing to a particular federal district should be enforced through a motion to transfer under 28 U.S.C. § 1404.[116] The Court also explained that "the appropriate way to enforce a forum-selection clause pointing to state or foreign forum is through the doctrine of *forum non conveniens*."[117] According to *Atlantic Marine*, "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum."[118]

The Supreme Court then proceeded to discuss the analysis lower courts should utilize in assessing motions to transfer venue under 28 U.S.C. § 1404 or motions to dismiss pursuant to the doctrine of *forum non conveniens*. It noted that in the absence of a forum selection clause, "the district court must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, transfer would serve 'the convenience of the parties and witnesses' and otherwise

---

[113] *Id.* at 576.

[114] *Id.*

[115] *Id.* at 577.

[116] *Id.* at 579.

[117] *Id.* at 580.

[118] *Id.*

promote 'the interest of justice.'"[119] The presence of a forum-selection clause, however, alters this

typical approach. The Supreme Court explained:

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."[120]

Specifically, "[t]he presence of a valid forum-selection clause requires district courts to

adjust their usual § 1404(a) analysis in three ways."[121] First, "the plaintiff's choice of forum merits

no weight,"[122] because "when a plaintiff agrees by contract to bring suit only in a specified

forum—presumably in exchange for other binding promises by the defendant—the plaintiff has

effectively exercised its 'venue privilege' before a dispute arises."[123] Second, "a court evaluating a

defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider

arguments about the parties' private interests."[124] Rather, a court "must deem the private-interest

factors to weigh entirely in favor of the preselected forum."[125] "As a consequence," the Supreme

---

[119] *Id.* at 581 (quoting 28 U.S.C. § 1404(a)).

[120] *Id.* (internal citations omitted) (quoting *Stewart Org., Inc. v. Rioch Corp.*, 487 U.S. 22, 31 (1988); *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

[121] *Id.*

[122] *Id.*

[123] *Id.* at 582.

[124] *Id.*

[125] *Id.*

Court explained, "a district court may consider arguments about the public-interest factors only."[126]

Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules."[127] Under this revised analytical framework, the forum selection clause will usually control:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.[128]

Notably, although *Atlantic Marine* determined that a court should enforce a forum-selection clause pointing to a state forum through the doctrine of *forum non conveniens,*[129] the Court never addressed its statement in *Sinochem* that "[t]he common-law doctrine of *forum non conveniens* 'has continuing application in federal courts only in cases where the alternative forum is abroad,' and perhaps in the rare instances where a state or territorial court serves litigational convenience best."[130]

## C.   "Permissive" Forum Selection Clauses

Although *Atlantic Marine* did not distinguish between different kinds of forum selection clauses, the Fifth Circuit—as well as the other circuits—recognizes both "mandatory" and

---

[126]  *Id.*

[127]  *Id.*

[128]  *Id.* at 583.

[129]  *Id.* at 580.

[130]  *Sinochem*, 549 U.S. at 430 (citations and alterations omitted) (quoting *Am. Dredging*, 510 U.S. at 449 n.2).

"permissive" forum selection clauses.[131] As the Fifth Circuit explained in *City of New Orleans v. Municipal Administrative Services, Inc.*:

> A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. It is important to distinguish between jurisdiction and venue. Although it is not necessary for such a clause to use the word 'venue' or 'forum,' it must do more than establish that one forum will have jurisdiction.[132]

In this manner, the Fifth Circuit distinguishes between clauses in which the parties consent to personal jurisdiction in a particular forum, and clauses in which the parties require that the action be filed in a particular forum. A clause mandates the specified forum only when its language clearly communicates that all litigation will occur only in that forum.[133]

For example, in *Keaty v. Freeport Indonesia, Inc.*, the Fifth Circuit addressed a forum selection clause that read: "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York."[134] The court held that the clause waived personal-jurisdiction defenses the parties might have to suit

---

[131]  *See, e.g.*, *City of New Orleans v. Mun. Admin. Serv., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) ("A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive."); *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 958 (5th Cir. 1974) (holding that the trial court erred in interpreting a contractual provision as a "mandatory forum-selection clause" and determining that "this is not a situation where the contract, on its face, clearly limits actions thereunder to the courts of a specified locale"); *see also, e.g.*, *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003) (holding that "[t]he forum selection clause is permissive," rather than mandatory or exclusive).

[132]  *Id.*

[133]  *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir.2009) ("Mandatory forum-selection clauses that require all litigation to be conducted in a specified forum are enforceable if their language is clear." (citing *City of New Orleans*, 376 F.3d at 504)).

[134]  *Keaty*, 503 F.2d at 956.

in New York, but did not mandate that New York be the exclusive forum to litigate all disputes.[135]

Similarly, in *Caldas & Sons, Inc. v. Willingham*, the Fifth Circuit examined a forum selection clause providing that "[t]he laws and courts of Zurich are applicable."[136] There, the court determined that "the parties consented to the personal jurisdiction of the Zurich courts. Beyond that, however, the language does not clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes arising out of the contract."[137]

Although *Atlantic Marine* never addressed the "permissive" versus "mandatory" distinction, district courts across the country have generally limited the *Atlantic Marine* framework to situations where the forum selection clause is mandatory. For example, in *RELCO Locomotives, Inc. v. AllRail, Inc.*, a court in the Southern District of Iowa determined that *Atlantic Marine* did not apply where the forum selection clause at issue stated that "'[e]ach Party irrevocably and unconditionally submits to the *non-exclusive* jurisdiction of [Quebec]' and 'waives any right it has to object to an action brought in such courts.'"[138] The *RELCO* court explained that "*Atlantic Marine*'s discussion of forum-selection clauses describes those where 'a plaintiff agrees by contract to bring suit *only* in a specified forum,'"[139] and thus determined that "the opinion contemplated only mandatory forum-selection clauses when assessing their effect on *forum non conveniens* analysis."[140] Finding that the

---

[135] *Id.* at 956.

[136] *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994).

[137] *Id.* at 128.

[138] *RELCO Locomotives, Inc. v. AllRail, Inc.*, —F. Supp. 2d—, 2014 WL 1047153, at *8 (S.D. Iowa Mar. 5, 2014) (emphasis and alteration in original).

[139] *Id.*

[140] *Id.*

plaintiff did not agree to bring suit exclusively in Quebec, the court applied "the traditional *forum non conveniens* analysis, and not the modified *Atlantic Marine* analysis."[141]

Likewise, in *United States ex rel. MDI Services, LLC v. Federal Insurance Company*, a court in the Northern District of Alabama applied *Atlantic Marine* only after determining that the forum selection clause was mandatory. In its analysis, the court explained that whether the forum selection clause was mandatory or permissible was a threshold issue:

> Plaintiffs argue that the court should deny the transfer because, unlike the "mandatory" forum-selection clause at issue in *Atlantic Marine*, the forum-selection clause in the Subcontract is "permissible." The forum-selection clause in *Atlantic Marine* "stated that all disputes between the parties 'shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division.'" The use of the imperative "shall" indicates that the Supreme Court had before it a mandatory forum-selection clause that dictated an exclusive forum for litigation under the contract. This fact is significant because the Supreme Court reasoned that the mandatory forum-selection clause at issue in Atlantic Marine "represented the parties' agreement as to the most proper forum," and "enforcement of [the clause], bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."
>
> A permissive forum-selection clause, on the other hand, only authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. Thus, the parties to a permissive forum-selection clause only bargain for what may constitute a proper forum, rather than what constitutes the exclusive forum for litigating disputes. In that respect, keeping a case in the plaintiff's chosen forum despite a permissive forum-selection clause would not "unnecessarily disrupt the parties' settled expectations." Accordingly, the considerations relevant to altering the § 1404(a) analysis for mandatory forum-selection clauses would not apply in this case if Plaintiffs are correct that the Subcontract's forum-selection clause is permissive.[142]

---

[141] *Id.*

[142] *United States ex rel. MDI Serv., LLC v. Fed. Ins. Co.*, No. 13-2355, 2014 WL 1576975, at *3 (N.D. Ala. Apr. 17, 2014) (internal citations omitted) (quoting *Atlantic Marine*, 134 S. Ct. at 575, 581, and 583).

Similar approaches have been taken by courts in the Southern District of New York[143] and the

Middle District of Florida.[144]

At least one district court, however, has concluded that *Atlantic Marine* applies even if the

forum selection is permissive. In *United American Healthcare Corporation v. Backs*, a court in the

Eastern District of Michigan explained:

> Defendants attempt to argue that the guidance provided by *Atlantic Marine* does not
> apply here because this case involves a permissive forum selection clause whereas
> the forum selection clause at issue in *Atlantic Marine* was mandatory. (*See* SPA
> [Stock Purchase Agreement] section 9.19: "Each of the Parties submits to the
> jurisdiction of any state or federal court sitting in the State of Michigan in any
> proceeding arising out of or relating to this Agreement and agrees that all claims in
> respect of the proceeding *may be heard* and determined in any such court . . . ."
> (emphasis added)). However, Defendants have cited no authority showing that this
> distinction is even relevant in this jurisdiction, nor any authority showing that such
> a distinction would change this Court's analysis of a section 1404 issue. Therefore,
> this Court finds that *Atlantic Marine* will inform this Court's analysis of Defendants'
> current motion.[145]

There is no binding authority addressing whether the *forum non conveniens* framework set

forth in *Atlantic Marine* applies where the parties only agree to a permissive, rather than mandatory,

forum selection clause. Nevertheless, the Court finds the approach taken by *RELCO*, *MDI Services*,

and other district courts that took into consideration whether the forum selection was mandatory or

---

[143] *See, e.g.*, *Fubon Ins. Co. Ltd.*, No. 12-5035, 2014 WL 1383604, at *5 (S.D.N.Y. Mar. 3, 2014). In *Fubon*, the court recognized that under *Atlantic Marine* "a valid forum selection clause requiring suit in a foreign forum must be given 'controlling weight in all but the most exceptional cases." *Id.* (quoting *Atlantic Marine*, 134 S. Ct. at 579). However, it explained that under Second Circuit precedent, "the validity of a forum selection clause is determined under a four-part analysis," which looks at, *inter alia*, "whether the clause is 'mandatory or permissive.'" *Id.* (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).

[144] *See PNC Bank, N.A. v. Akshar Petroleum, Inc.*, No. 13-436, 2014 WL 1230689, at *6 (Mar. 25, 2014) (applying *Atlantic Marine* only after determining that the "causes of action in this lawsuit are governed by valid, mandatory, forum-selection clauses").

[145] *United Am. Healthcare Corp. v. Back*s, —F. Supp. 2d—, No. 13-13570, 2014 WL 555194, at *7 (E.D. Mich. Feb. 12, 2014).

permissive to be persuasive, because the Fifth Circuit recognizes the distinction between mandatory and permissive forum selection clauses and provides guidance on how to interpret such clauses. Moreover, in *Atlantic Marine*, the Supreme Court emphasized the importance of enforcing the terms of the parties' contract. Specifically, it reasoned that "courts should not unnecessarily disrupt the parties' settled expectations" and that "'the interest of justice' is served by holding parties to their bargain."[146] Under the framework in *Atlantic Marine*, a forum selection clause has "controlling weight in all but the most exceptional cases."[147] Giving a permissive clause controlling weight, however, would be antithetical to "holding parties to their bargain." Essentially, a permissive clause would be transformed into a mandatory clause anytime a defendant raised the doctrine of *forum non conveniens*. This situation would surely disrupt the parties' "settled expectations" that they were merely consenting to jurisdiction, rather than choosing one forum to the exclusion of all others.

**D.    Analysis**

### 1.    Motion to Dismiss for *Forum Non Conveniens*

Having determined that *Atlantic Marine* only applies to a mandatory forum selection clause, the Court must now evaluate whether the clause in the Landfill Time Contract is mandatory or permissive. The Landfill Time Contract provides:

> Jurisdiction: This Agreement and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the State of Louisiana and the parties hereto submit to the jurisdiction of the 24th Judicial District for the Parish of Jefferson, State of Louisiana. The parties hereby waiving [sic] any and all plea[s] of lack of jurisdiction or improper venue.[148]

---

[146] *Atlantic Marine*, 134 S. Ct. at 583.

[147] *Id.* at 579.

[148] Rec. Doc. 8-1 at p. 2 (second alteration in original).

As the Fifth Circuit explained in *City of New Orleans* "[a] party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another."[149] Rather, "[f]or a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive."[150] By agreeing that they "submit to the jurisdiction of the 24th Judicial District," Waste Management and Jefferson Parish have only consented to jurisdiction in the 24th Judicial District, and have not "clearly demonstrate[d]" any intent to deprive all other possible forums of jurisdiction. Accordingly, the Court finds that the forum selection clause in the Landfill Time Contract is permissive, and thus the *Atlantic Marine* framework does not control.

If *Atlantic Marine* does not control, the question becomes what is the appropriate framework to apply. At this juncture, the Court is cognizant of *Sinochem*'s observation that "[t]he common-law doctrine of *forum non conveniens* 'has continuing application in federal courts only in cases where the alternative forum is abroad,' and *perhaps in the rare instances* where a state or territorial court serves litigational convenience best."[151] This statement limiting *forum non conveniens* to "rare instances" in the domestic context, however, appears to be in tension with *Atlantic Marine,* which held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[152] It may be that the extent to which *forum*

---

[149] *City of New Orleans*, 376 F.3d at 504.

[150] *Id.*

[151] *Sinochem*, 549 U.S. at 430 (emphasis added) (citations and alterations omitted) (quoting *Am. Dredging*, 510 U.S. at 449 n.2); *see also Quackenbush*, 517 U.S. at 722 (1996) ("[T]o the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in 'cases where the alternative forum is abroad.'" (quoting *Am. Dredging*, 510 U.S. at 449 n.2)).

[152] *Atlantic Marine*, 134 S. Ct. at 580.

*non conveniens* applies outside the specific context contemplated in *Atlantic Marine*—in which there is a mandatory forum selection clause—is an open question.

Assuming that *forum non conveniens* may still apply in the absence of a mandatory forum selection clause, however, the Court applies the traditional four-part *forum non conveniens* analysis discussed above. As the Fifth Circuit explained in *Gonzalez v. Chrysler Corp.*:

> First, the district court must assess whether an alternative forum is available. An alternative forum is available if the entire case and all parties can come within the jurisdiction of that forum. Second, the district court must decide if the alternative forum is adequate. An alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. If the district court decides that an alternative forum is both available and adequate, it next must weigh various private interest factors. If consideration of these private interest factors counsels against dismissal, the district court moves to the fourth consideration in the analysis. At this stage, the district court must weigh numerous public interest factors. If these factors weigh in the moving party's favor, the district court may dismiss the case.[153]

In this case, the proposed alternative[154] forum is the 24th Judicial District for the Parish of Jefferson, State of Louisiana. Pursuant to *Gonzalez*, the Court first considers whether the 24th Judicial District would be an "available" forum—that is, whether "the entire case and all parties can come within the jurisdiction of that forum."[155] Pursuant to the permissive forum selection clause in the Landfill Time Contract, the parties have already consented to the jurisdiction of 24th Judicial District, and thus it is an available forum. Second, the Court evaluates whether the 24th Judicial District would be an "adequate" forum; it is considered adequate "if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might

---

[153] *Gonzalez*, 301 F.3d at 379–80 (internal citations and quotation marks omitted).

[154] In this context, "alternative" means an alternative to the forum in which plaintiff chose to file suit—not an alternative to the forum specified in the forum selection clause.

[155] *Id.* at 379 (internal quotation marks omitted).

receive in an American court."[156] The 24th Judicial District is an American court, and it will provide a remedy for breach of contract and treat the parties fairly.[157] Thus, it is an adequate forum.

Having determined that the 24th Judicial District is an available and adequate forum, the Court turns to the private interest factors. The "private interest" factors to be evaluated include:

> (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of the premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive, enforceability of judgment; and whether the plaintiff has sought to "vex," "harass," or "oppress" the defendant.[158]

With respect to the sources of proof, courts have determined that this factor will weigh in favor of dismissal where the relevant documents are found in a different country and written in a foreign language. For example, in *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984*, a district court in the Southern District of New York determined that the sources of proof factor weighed heavily in favor of dismissal where many of the documents were located in India and were written in Hindi, which an American court would need translated.[159] There are no similar considerations present in the pending case, and thus, the sources-of-proof factor appears to be neutral.

---

[156] *Id.* at 379–80 (internal quotation marks omitted).

[157] The Court notes that perhaps it could be considered unfair to deprive Waste Management of a federal forum, which is provided for by 28 U.S.C. § 1332. As the Fifth Circuit has explained, "the primary underlying purpose of the diversity statute [is] to provide a separate forum for out-of-state citizens to protect those citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts." *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1153 (5th Cir. 1985).

[158] *DTEX*, 508 F.3d at 794 (quoting *Gulf Oil Corp.*, 330 U.S. at 508) (alterations omitted).

[159] *See In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984*, 634 F. Supp. 842, 858–59 (S.D.N.Y. 1986).

The second factor—the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses—also appears neutral. Compulsory process is equally available in the 24th Judicial District and the Eastern District of Louisiana. Further, any difference in the cost of obtaining attendance of willing witnesses is *de minimis*, as the courthouse for the Eastern District of Louisiana is in Orleans Parish, which is adjacent to Jefferson Parish.

The third factor is the possibility of viewing the premises. It is unclear whether there is any need to view the landfill at issue in this case. Regardless, the landfill is easily accessible from the courthouse for the Eastern District of Louisiana, which, as just noted, is located in neighboring Orleans Parish. Thus, this factor is neutral.

The fourth factor examines all other practical problems that make trial of a case easy, expeditious and inexpensive, enforceability of judgment, and whether the plaintiff has sought to "vex," "harass," or "oppress" the defendant. This factor appears to be neutral or may weigh slightly in favor of litigating in the Eastern District of Louisiana. There are no practical problems created by litigating at a courthouse in Orleans Parish as opposed to one Jefferson Parish. As for the enforceability of judgment, in light of Louisiana's anti-seizure provisions, Waste Management may be able to more readily enforce a judgment issued by this Court as opposed to the 24th Judicial District.[160]

---

[160] In this case, Waste Management is suing Jefferson Parish, a political subdivision of the state of Louisiana. *See* La. R.S. § 31:5102. The Louisiana state constitution provides that "no public property or public funds shall be subject to seizure" and that "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." La. Const. art. 12, § 10(C); *see also* La. R.S. § 13:5109(B)(2) ("Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision."). However, the Fifth Circuit has

Having determined that all of the private interest factors are neutral or weigh slightly in favor of the Eastern District of Louisiana, the Court finally turns to the public interest factors, which are:

(i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

The first factor—the administrative difficulties flowing from court congestion—appears to be neutral. There is no indication that the Eastern District of Louisiana is more congested than the 24th Judicial District. The second factor—the local interest in having localized controversies resolved at home—is also neutral. This dispute involves a contract governing a landfill in Jefferson Parish, which is located within the Eastern District of Louisiana. The third and fourth factors—the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action, and the avoidance of unnecessary problems in conflicts of law, or in application of foreign law—is neutral as the Court is very familiar with Louisiana law and routinely applies it when exercising its diversity jurisdiction. Finally, the fifth factor—the unfairness of burdening citizens in an unrelated forum with jury duty—is neutral because, as just noted, this dispute involves a contract governing a landfill located within the Eastern District of Louisiana.

In sum, the private factors are either neutral or weigh slightly in favor of the Eastern District of Louisiana, and all of the public factors are neutral. However, as the Fifth Circuit instructed in

held that "when there is a federal interest in the remedy, we may trump a state's anti-seizure provision and enforce a money judgment against a public entity." *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 F. App'x 921, 923 (5th Cir. 2009) (citing *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 653 (5th Cir. 2000)). For example, the Fifth Circuit has found a federal interest where a plaintiff in civil rights action against the state seeks attorneys' fees pursuant to the Civil Rights Attorneys' Fees Act of 1976. *See Gary W. v. Louisiana*, 622 F.2d 804 (5th Cir. 1980); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980). The Fifth Circuit "has also recognized a sufficient federal interest when a state makes abundantly clear that it will never satisfy the judgment." *Freeman*, 352 F. App'x at 923 (citing *Gates*, 616 F.2d at 1271–72).

*DTEX,* "[o]rdinarily a strong favorable presumption is applied to the plaintiff's choice of forum,"[161] and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Considering that the private factors are neutral or weigh slightly in favor of the Eastern District of Louisiana, and that all of public factors are neutral, Jefferson Parish has not overcome the "strong favorable presumption" in favor of Waste Management's choice of forum.

### 2. Motion to Dismiss Pursuant for Failure to State a Claim

In the alternative, Jefferson Parish maintains that "this matter should still be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6)."[162] According to Jefferson Parish, "dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6) because the Plaintiffs' [sic] Complaint, based on and incorporating by reference the Landfill Time Contract, taken as true, contains an affirmative defense on its face via the forum-selection clause, and therefore fails to state a claim upon which relief can be granted."[163]

As discussed above, the forum selection clause in the Landfill Time Contract is permissive, not mandatory. Although Waste Management consented to the jurisdiction of the 24th Judicial District, it did not agree that the 24th Judicial District would be the exclusive forum for resolving disputes. Accordingly, the forum selection clause does not preclude Waste Management from obtaining relief in this Court, and dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is unwarranted.

---

[161] *DTEX, LLC*, 508 F.3d at 795.

[162] Rec. Doc. 8-1 at p. 11.

[163] *Id.* at p. 13.

## IV. Conclusion

As discussed above, the Court finds that *Atlantic Marine* applies only where the parties agree to a mandatory forum selection clause. In this case, however, the Landfill Time Contract between Jefferson Parish and Waste Management contains a permissive forum selection clause. Thus, the Court has engaged in the traditional *forum non conveniens* analysis, in which a "strong favorable presumption" applies to Waste Management's choice of forum. Although the 24th Judicial District for the Parish of Jefferson, State of Louisiana is an "available" and "adequate" forum, the private factors are either neutral or weigh slightly in favor of the Eastern District of Louisiana, and all of the public factors are neutral. Thus, the Court will not disturb the plaintiff's choice of forum. Accordingly,

**IT IS HEREBY ORDERED** that Jefferson Parish's "Motion to Dismiss"[164] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this <u>5th</u> day of September, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[164]  Rec. Doc. 8.