## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WASTE MANAGEMENT OF LOUISIANA, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6764** |
| **JEFFERSON PARISH** | **SECTION: "G"(5)** |

### ORDER

Presently pending before the Court are Defendant Waste Management of Louisiana L.L.C.'s ("Waste Management") "Motion to Exclude Expert Report and Potential Testimony of Frank C. Newell"[1] and Counterclaim Defendant T&K Construction, L.L.C.'s ("T&K") "Motion to Exclude Expert Report of Frank C. Newell and Preclude Expert Testimony of Frank C. Newell Related to T&K's Scope of Work on the Jefferson Parish Landfill."[2] Having reviewed the motions, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant the motions in part and deny them in part

### I. Background

**A.     Factual Background**

According to the complaint, on October 9, 1996, Jefferson Parish entered into a "Time Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site" (the "Landfill Time Contract") with John Sexton Sand and Gravel Corp ("Sexton").[3] In 1998,  with the approval of Jefferson Parish, Sexton sold, transferred, and assigned the Landfill

---

[1] Rec. Doc. 90.

[2] Rec. Doc. 93.

[3] Rec. Doc. 1 at ¶ 7.

1

Time Contract to Plaintiff Waste Management ("Plaintiff").[4] The Landfill Time Contract contains the  forum-selection clause at issue in the pending motion.

Pursuant to the Landfill Time Contract, Waste Management managed the Jefferson Parish Sanitary Landfill (the "Landfill") and the disposal of all solid waste and sewage sludge generated in Jefferson Parish.[5] According to the complaint, the Landfill was divided into Phases I, II, IIIA, and IIIB.[6] Under the terms of the contract, Waste Management received an initial lump sum from Jefferson Parish as well as a "tipping fee" for all wastes disposed of in Phases IIIA and IIIB. In turn, Waste Management was obligated to pay a royalty on certain wastes to Jefferson Parish.[7] Waste Management alleges that the term of the Landfill Time Contract was to end when Phases IIIA and IIIB were filled and closed.[8]

According to Waste Management, on or about May 17, 2012, while the Landfill Time Contract was still in effect, Jefferson Parish and IESI Landfill Corporation ("IESI") entered into a "Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site" (the "IESI Contract").[9] The IESI Contract called for IESI to develop a new Phase IVA of the Landfill, located between and partially on top of Phases IIIA and IIIB.[10] Waste Management

---

[4] *Id.*

[5] *Id.* at ¶ 8.

[6] *Id.*

[7] *Id.* at ¶ 10.

[8] *Id.* at ¶ 9.

[9] *Id.* at ¶ 12.

[10] *Id.* at ¶ 13

claims that IESI's development of Phase IVA interfered with its ongoing operations in Phase IIIB.[11] Further, Waste Management asserts that Jefferson Parish forced it to relocate a haul road to facilitate IESI's development of Phase IVA.

On February 6, 2013, Waste Management entered into a construction agreement with T&K ("Closure Contract") to perform the final closure of the Landfill's Phase IIIB.[12] The Parish states that the Closure Contract provided for a start date of January 1, 2013 and a substantial completion date of July 31, 2013.[13] Waste Management claims that in March 2013, at Jefferson Parish's request, Waste Management agreed to end its Landfill operations by May 1, 2013, even though Phase IIIB had yet to be filled and closed.[14] Jefferson Parish, however, contends that the Landfill Time Contract terminated on May 1, 2013 by its own terms and that Waste Management maintained continuing obligations to complete work for which it had already been paid.[15]

According to the complaint, Waste Management transitioned Landfill operations to IESI on April 30, 2013.[16] Following the transition, however, Waste Management alleges that it continued to work on the installation of a final cap system, "consisting of soil and synthetic layers/liners," that would close Phase IIIB.[17] According to Waste Management, its work on the final cap system was

---

[11] *Id.*

[12] Rec. Doc. 91-2 at p. 6.

[13] Rec. Doc. 37 at ¶ 22.

[14] Rec. Doc. 1 at ¶ 15.

[15] Rec. Doc. 37 at ¶ 19.

[16] Rec. Doc. 1 at ¶ 15.

[17] *Id.*

complicated by Jefferson Parish's failure to collect and control landfill gases.[18] T&K also claims that Jefferson Parish's failures made it "impossible" for T&K to complete its remaining tasks on the job.

On August 21, 2013, Waste Management delivered a "Notice of Termination" to Jefferson Parish, purporting to terminate the Landfill Time Contract, effective August 31, 2013.[19] Waste Management claims that it terminated the contract due to Jefferson Parish's failure to pay certain invoices.[20] On August 31, 2013, Waste Management ceased work on the Landfill; according to the complaint, the final cap system "was largely complete" at this time.[21] According to Jefferson Parish, Waste Management then assigned the performance obligations of the final capping work to Jefferson Parish.[22] T&K, however, states that this assignment was without its express written consent.[23]

Waste Management filed suit against Jefferson Parish on December 20, 2013.[24] On October 10, 2014, Jefferson Parish filed a multi-count counterclaim against Waste Management, as well as against a new party, T&K.[25] Jefferson Parish alleges that T&K, the Counterclaim Defendant, is a third-party landfill contractor that breached its contract with Waste Management by failing to

---

[18] *Id.* at ¶¶ 23–24.

[19] *Id.* at ¶ 16.

[20] *Id.*

[21] *Id.*

[22] *Id.* at ¶ 17.

[23] Rec. Doc. 91-2 at p. 8.

[24] Rec. Doc. 1.

[25] Rec. Doc. 37.

complete certain improvements to part of the Landfill.[26] Jefferson Parish alleges that it was the third-party beneficiary of the Closure Contract or, in the alternative, that the contract was assigned to it.[27] Therefore, Jefferson Parish contends, it has standing to sue T&K for breach of contract and unjust enrichment.[28]

On January 30, 2015, the Court issued a scheduling order setting a deadline of July 22, 2015 for written reports of Plaintiff's experts, as defined by Federal Rule of Civil Procedure 26(a)(2)(B), to be delivered to Defendant's counsel, and a deadline of August 21, 2015 for Defendants to serve upon Plaintiff's counsel any written reports of experts who may be witnesses for Defendants.[29] On July 1, 2015, in response to a request by the parties, the Court issued a clarification of its scheduling order, noting that written reports for experts testifying to issues involving the assertion of claims by Plaintiff and Plaintiff-in-Counterclaim would be due no later than July 22, 2015, and that reports for experts for issues involving the defense of claims by Defendant and Defendants-in-Counterclaim would be due by August 21, 2015.[30]

Jefferson Parish designated Frank C. Newell ("Newell") as expert to review Waste Management's claims against the Parish and offer expert opinions as a civil engineer.[31] Newell

---

[26] *Id.* at pp. 17–18.

[27] Rec. Doc. 98 at p. 4.

[28] Rec. Doc. 98 at p. 4.

[29] Rec. Doc. 60 at pp. 2–3.

[30] Rec. Doc. 64.

[31] Rec. Doc. 93-1 at p. 1.

submitted his expert report on August 21, 2015.[32]

## B.   Procedural Background

On August 31, 2015, Waste Management filed a "Motion to Exclude Expert Report and Potential Testimony of Frank C. Newell."[33] Jefferson Parish filed a memorandum in opposition on September 8, 2015,[34] and Waste Management submitted a reply on September 21, 2015.[35] On September 1, 2015, T&K filed a separate "Motion to Exclude Expert Report of Frank C. Newell and Preclude Expert Testimony of Frank C. Newell Related to T&K's Scope of Work on the Jefferson Parish Landfill."[36] On September 8, 2015, Jefferson Parish filed a memorandum in opposition,[37] and T&K followed with a reply on September 16, 2015.[38] Trial is scheduled to begin November 2, 2015.[39]

## II. Parties' Arguments

## A.   Waste Management's Motion in Limine

### 1.   Waste Management's Arguments in Support of Its Motion

Waste Management claims that, first, Newell's opinions do not pass the reliability test set

---

[32] Rec. Doc. 93-2.

[33] Rec. Doc. 90.

[34] Rec. Doc. 100.

[35] Rec. Doc. 116.

[36] Rec. Doc. 93.

[37] Rec. Doc. 102.

[38] Rec. Doc. 112.

[39] Rec. Doc. 60.

forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[40] Waste Management argues that Newell's opinions do not meet the *Daubert* or Federal Rule of Evidence 702 standard of relevance and reliability, and may be dismissed as "speculative or conjectural."[41] Waste Management alleges that Newell's expert report is also deficient under Federal Rule of Civil Procedure 26(a)(2)(B), which requires: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case.[42] Waste Management claims that Newell's expert report is deficient because it provides no basis or reason behind any of his opinions, and should therefore be excluded from evidence.[43]

Second, Waste Management alleges that Newell's opinions amount to an interpretation of the Landfill Time Contract, and cites *Crosby Memorial Hospital v. Abdallah* for the proposition that such interpretations of law are outside the permissible realm of expert testimony.[44] Waste Management argues that the issues surrounding the interpretation of a legal contract unquestionably call for a legal conclusion, and that the interpretation of a contract is a question of law for the Court

---

[40] Rec. Doc. 90-1 at p. 1 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

[41] *Id.* at p. 3 (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)).

[42] *Id.*

[43] *Id.* at p. 4.

[44] *Id.* at pp. 1–2, 4 (citing *Crosby Mem'l Hosp. v. Abdallah*, 48 Fed. App'x 102 (5th Cir. 2002)).

to decide.[45] Such testimony, Waste Management contends, does not assist the trier of fact to determine a fact in issue, which is the goal of expert testimony.[46] Instead, Waste Management avers, Newell usurps the Court's role by providing interpretations of the Landfill Time Contract.[47] Waste Management notes that Newell quotes the Landfill Time Contract 21 times, and that of the 23 opinions provided in his report, 7 constitute interpretations of the Landfill Time Contract.[48] Waste Management argues that it is "abundantly evident" that Newell's report is designed to support Jefferson Parish's claims regarding who is responsible for various issues relevant to liability under the Landfill Time Contract, and that such testimony is improper under *Daubert*.[49] Waste Management quotes extensively from Newell's expert report, highlighting instances in which it alleges that Newell is providing legal conclusions labeled as opinions.[50]

Third, the company claims that no foundation has been laid for Newell's qualifications to testify as an expert in this case.[51] Waste Management alleges that *Daubert* aims at excluding expert testimony that is based merely on subjective belief or unsupported speculation, and that extrapolating meaning from a contract is inherently subjective.[52] The company argues that the "vast majority" of Newell's written report involves sections of the Landfill Time Contract and that his

---

[45] *Id.* at p. 4 (citing *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096 (5th Cir. 1995)).

[46] *Id.*

[47] *Id.* at p. 5.

[48] *Id.*

[49] *Id.* at p. 6.

[50] *Id.* at pp. 6–8.

[51] *Id.* at p. 2.

[52] *Id.* at p. 9.

potential trial testimony would be prejudicial because it is not based on any particular method or technique, but is simply his interpretation of a contract.[53]

Additionally, Waste Management says, although Newell's resume is attached to the report, there is no showing as to why his credentials qualify him for the case at hand.[54] The company argues that the "Forensic Engineering Experience" section of Newell's resume demonstrates that he has no expertise in the engineering aspects of a landfill, and that indeed the words "landfill" and "solid waste" are absent from his resume.[55] Waste Management also alleges that his report is deficient under Federal Rule of Civil Procedure 26 because it fails to set forth his qualifications and does not contain a list of any publications he has authored.[56]

### 2.   *Jefferson Parish's Arguments in Opposition*

In its Opposition, Jefferson Parish responds that Newell is qualified to serve as an expert witness in this case, arguing that his expert report, along with his supplemental report, show that he has extensive experience as a professional civil engineer and land surveyor dating back to 1982, has worked extensively in engineering and construction contract administration, and has experience in drainage, landfills, sewerage, water treatment and roadway engineering.[57] As such, Jefferson Parish contends, Newell is qualified to opine as to the Parish's defenses in the case, including the rights and

---

[53] *Id.*

[54] *Id.*

[55] *Id.* at pp. 9–10.

[56] *Id.* at p. 10.

[57] Rec. Doc. 100 at p. 2.

obligations of the parties under the Landfill Time Contract.[58]

Jefferson Parish argues that Newell's opinions regarding the contract are admissible and that Waste Management's reliance on *Crosby Memorial Hospital v. Abdallah* is misplaced.[59] There, Jefferson Parish contends, the district court struck the legal conclusions in an expert affidavit filed in conjunction with a motion for summary judgment.[60] According to Jefferson Parish, the Fifth Circuit upheld the exclusion, reasoning that Federal Rule of Civil Procedure 56, governing summary judgment, limits the matters to be properly included in an affidavit to facts based on personal knowledge.[61] Thus, Jefferson Parish states, although the Fifth Circuit held it was appropriate for the district court to exclude portions of the affidavit that were useless at the summary judgment stage, the case is not applicable to the admission of expert testimony at trial.[62]

Instead, Jefferson Parish contends, "the admission of expert testimony to provide context on an industry practice and interpret contractual provisions specific to such an industry falls within a district court's discretion, so long as the explanation provided by the expert is needed to more accurately comprehend the meaning of technical terms used within that industry or trade."[63] Jefferson Parish cites Louisiana Civil Code 2047 for the proposition that words of a contract must be given their generally prevailing meaning, and that words of art and technical terms should be

---

[58] *Id.* at pp. 2–3.

[59] *Id.* at p. 4 (citing *Crosby Mem'l Hosp. v. Abdallah*, 48 Fed. App'x 102 (5th Cir. 2002)).

[60] *Id.*

[61] *Id.*

[62] *Id.* at p. 5.

[63] *Id.* (quoting *Dickson v. Sklarco L.L.C.*, No. 11-0352, 2014 WL 4443423, at *3 (W.D. La. Sept. 9, 2014)).

interpreted according to the meaning of that term in the industry.[64] Thus, the Parish contends, the use of expert testimony to explain the technical meaning of terms used in an industry is "prudent."[65]

Jefferson Parish also challenges Waste Management's assertion that Newell's opinions should be excluded because they are opinions as to "ultimate legal issues," arguing that opinions are not objectionable just because they embrace ultimate issues, and citing the advisory committee notes to Federal Rule of Evidence 704 for the proposition that strictures against allowing witnesses to express opinions upon ultimate issues are no longer in favor.[66] The Parish contends that Newell's opinions refer to the Landfill Time Contract because his technical opinions, based on his understanding of the operation of the landfill, are inextricable from the relevant contract provisions.[67] Jefferson Parish's position is that Newell's opinions will help the trier of fact interpret terms in the contract in light of scientific usage and the course of dealings between the parties.[68] In the alternative, Jefferson Parish suggests that if the Court wishes to exclude a portion of Newell's testimony, he should be permitted to testify regarding the opinions set forth in his report, subject to a limiting instruction that he may not render legal opinions as to the meaning of contract provisions.[69]

Jefferson Parish also rebuts Waste Management's claim that Newell's report lacks adequate

---

[64] *Id.*

[65] *Id.* (quoting *Phillips Oil Co. vo OKC Corp.* 812 F.2d 265, 281–82 (5th Cir. 1987)).

[66] *Id.* at p. 6 (citing *Weitz Co. v. MH Washington*, 631 F.3d 510 (8th Cir. 2011)).

[67] *Id.*

[68] *Id.* at p. 7.

[69] *Id.*

foundation, arguing that, in Newell's supplement to his expert report, attached with the Parish's Opposition, Newell sets forth in detail his extensive experience in contract management.[70] The Parish also notes that Newell's report states that he has reviewed the documents provided by the parties in this litigation, has conducted site visits, and engaged in interviews with the Landfill Engineer.[71] The combination of his experience and the "voluminous facts and data that he reviewed" provides a "more than adequate foundation" for Newell's opinions, according to Jefferson Parish.[72]

### 3.   *Waste Management's Arguments in Further Support of Its Motion*

In reply, Waste Management contends that while it is true that expert testimony may sometimes be admissible to explain technical or scientific terms within a contract, none of Newell's opinions contain an explanation of any term in the Landfill Time Contract, let alone a technical term.[73] Instead, Waste Management avers, Newell's opinions simply interpret the plain language of the contract, "always with an aim at shifting liability from Jefferson Parish to Waste Management."[74] As an example, Waste Management cites page 20 of Newell's report, where he states:

> It is my understanding that timely notice of this claim was not given to Jefferson Parish by Waste Managment, as required by Section XI, General Conditions, Paragraph M, Extra and/or Additional Service/Work and Changes, page 36 of the Time Contract.[75]

Furthermore, Waste Management challenges Jefferson Parish's reliance on Federal Rule of

---

[70] *Id.*

[71] *Id.* at pp. 7–8.

[72] *Id.* at p. 8.

[73] Rec. Doc. 116 at p. 1.

[74] *Id.* at p. 2.

[75] *Id.*

Evidence 704, arguing that while expert opinions are not necessarily inadmissible merely because they embrace an ultimate legal issue, the Fifth Circuit has held unequivocally that legal conclusions or statements of advocacy do not assist the factfinder.[76] Waste Management also contends that Jefferson Parish's reliance on *Weitz Co. v. MH Washington* is misplaced, arguing that an expert's interpretation of provisions of a contract was not at issue in *Weitz*, which instead dealt with an objection to an expert's methodology.[77] The company contends that *Weitz* in no place states that an expert's opinion is admissible when it is "inextricable" from the provisions of a contract, and that furthermore, if Newell's opinions are indeed so inextricably linked to the contract, then it is clear he is rendering an opinion as to the meaning of that contract and his opinions should be excluded.[78]

Waste Management argues that Jefferson Parish's alternative request—that the Court issue a limiting instruction prohibiting Newell from rendering legal opinions as to the meaning of contract provisions—would not suffice because nearly all of Newell's opinions constitute legal conclusions or interpretations of the Landfill Time Contract.[79] Waste Management further contends that even if any of Newell's opinions are allowed, he can only testify in support of Jefferson Parish's defenses to Waste Management's claims, because the report was not timely submitted by July 22, 2015, the deadline for expert reports supporting Plaintiffs and Plaintiffs-in-Counterclaim.[80]

Finally, Waste Management reavers that Newell's supplemental report does not establish a

---

[76] *Id.* (citing *Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 197–98 (5th Cir. 1996)).

[77] *Id.* at p. 3 (citing *Weitz Co. v. MH Washington*, 631 F.3d 510, 526 (8th Cir. 2011)).

[78] *Id.*

[79] *Id.* at p. 4.

[80] *Id.* at n.1.

foundation for his opinions, arguing that although the report states that Newell was recently retained and certified as an expert in a case "involving construction and contractual disputes," it does *not* say that he was certified as an expert in contract interpretation, nor could he be.[81] Furthermore, Waste Management claims, Newell has set forth no qualifications entitling him to testify as an expert regarding landfill contracts, stating that his supplemental report does not note any experience with landfill contracts, but merely states that he has evaluated landfill sites.[82] Waste Management also notes that Newell has not authored any publications in his area of expertise, and asserts that Newell's personal website includes no references to experience with landfill contracts or landfills generally.[83]

## B.    T&K's Motion in Limine

### 1.    *T&K's Arguments in Support of Its Motion*

T&K seeks to exclude Newell's testimony on the following grounds: (1) Jefferson Parish failed to meet the deadline in the Court's scheduling order for producing an expert report relating to T&K's scope of work; (2) the Parish's Rule 26 expert designation and report from Newell are procedurally deficient; and (3) Newell's expert opinions are improper because no foundation has been laid for his qualifications to testify as an expert regarding T&K's scope of work.[84]

T&K first argues that under the Court's initial scheduling order, written reports of experts who may be witnesses for issues regarding claims by Plaintiff or Plaintiff-in-Counterclaim were

---

[81] *Id.* at p. 4.

[82] *Id.* at p. 5.

[83] *Id.*

[84] Rec. Doc. 93 at p. 1.

required to be delivered to T&K by July 22, 2015.[85] T&K claims that, despite this order, Jefferson Parish—a Plaintiff-in-Counterclaim against T&K—did not serve Newell's expert report until August 21, 2015.[86] T&K asserts that even though the report states that it only relates to claims asserted against Jefferson Parish by Waste Management, the report makes assertions against T&K and offers opinion adverse to T&K.[87] A report related to such assertions, according to T&K, is thus untimely.[88]

Next, T&K argues that Newell's expert disclosures are also deficient because the reports fail to set forth his qualifications for providing expert testimony regarding T&K's scope of work.[89] T&K claims that Newell does not provide a list of publications authored by him in the last ten years, and thus his report and testimony should be excluded.[90]

Last, T&K alleges that Newell fails to provide proper qualifications or support for his "conclusory opinions relating to T&K" under *Daubert*.[91] According to T&K, although Newell's resume is attached to his report, there is no showing as to why his credentials qualify him to testify, and the "Forensic Engineering Experience" section of his resume "demonstrates that he has no expertise in the engineering aspects of a landfill or the processes employed by a landfill contractor."[92]

---

[85] Rec. Doc. 93-1 at p. 2.

[86] *Id.*

[87] *Id.*

[88] *Id.* at p. 3.

[89] *Id.*

[90] *Id.*

[91] *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

[92] *Id.* at p. 4.

### 2.     *Jefferson Parish's Arguments in Opposition*

In its Opposition, Jefferson Parish avers that Newell has worked extensively in the areas of engineering and construction contract administration and is well qualified to opine as to the Parish's defenses in this case.[93] First, Jefferson Parish claims that Newell's opinions regarding T&K are timely because they were offered in support of the Parish's defense to Waste Management's claims.[94] The Parish argues that Newell's opinions relate to its contentions that the Parish does not owe Waste Management for obligations that Waste Management subcontracted to T&K and that T&K ultimately did not complete.[95] As such, Jefferson Parish claims that T&K's role in the matter is inextricably linked to the Parish's defense to Waste Management's Complaint, and therefore are not untimely.[96]

Next, Jefferson Parish argues that Newell's opinions have an adequate foundation, noting that Newell's supplemental expert report sets forth in detail his experience in civil engineering, surveying and contract management.[97] The Parish also states that Newell's report is not deficient for failure to list his publications, because he has not authored any publications in the last ten years.[98] Jefferson Parish claims that the supplement outlines Newell's landfill experience and states that he has reviewed the documents provided by the parties to this litigation, as well as pleadings, discovery

---

[93] Rec. Doc. 102 at p. 3.

[94] *Id.* at p. 4.

[95] *Id.* at p. 5.

[96] *Id.*

[97] *Id.* at p. 6.

[98] *Id.* at n.11.

responses, the Landfill Time Contract, photos, plans and specifications.[99]

### 3.    *T&K's Arguments in Further Support of Its Motion*

In reply, T&K challenges Jefferson Parish's characterization of Newell's expert report as aimed only at supporting the Parish's defenses to Waste Management's allegations.[100] T&K argues that the report makes affirmative assertions against T&K's scope of work and offers an adverse opinion as to T&K[101] As an example, T&K points to a portion of Newell's report that states:

> "[A]fter T&K claimed that their capping work was completed, Jefferson Parish inspected the work and found that in many places the depth of fill placed by T&K was substantially below the 18" required. I also understand that T&K never provided seeding of the final cover. Accordingly the work has not been accepted by the Parish. . . ."[102]

Next, T&K quotes a portion of Jefferson Parish's Counterclaim:

> "Despite amicable demand, T&K has not completed the work required under the Construction Agreement, including, but not limited to:
> k) Completion of Phase IIIB final cover, road, and drainage;
> . . .
> m) Hauling of sufficient soil to complete the 18-inch thick soil cover;
> n) Seeding and establishing an acceptable vegetative cover; . . ."[103]

T&K argues that the excerpt from Newell's report is nearly identical to Jefferson Parish's counterclaim against T&K, and therefore his opinion is not merely a "defensive" assertion in response to Waste Management's claims, but rather offered in support of Jefferson Parish's

---

[99] *Id.* at p. 6.

[100] Rec. Doc. 112 at p. 2.

[101] *Id.*

[102] *Id.* (citing Rec. Doc. 93-2 at p. 18).

[103] *Id.* at pp. 2–3 (citing Rec. Doc. 37 at pp. 17–18).

affirmative claims against T&K.[104] T&K contends that Newell's report was thus untimely as it relates to T&K's performance and scope of work on the Landfill and should be excluded.[105]

Next, T&K reavers that Newell's report is deficient under Federal Rule of Civil Procedure 26 because it fails to set forth his qualifications for providing expert testimony regarding T&K's performance and scope of work.[106] T&K claims that Newell's report fails to provide sufficient qualifications to testify as an expert regarding construction work performed in closing a landfill, and once again alleges that Newell has provided no list of publications authored by him or a statement that he has not authored any publications in the last 10 years.[107] T&K also alleges that the fact that Jefferson Parish served it with a supplemental report after T&K and Waste Management filed motions to exclude Newell's testimony is evidence that the Parish knew that Newell's initial report was deficient when first served.[108]

Finally, T&K argues that the supplemental report fails to provide proper qualifications or support for Newell's opinions, and that, contrary to the Parish's contentions otherwise, the supplemental report proves that Newell has inadequate qualifications to render an expert opinion about T&K in this case.[109] T&K notes that Newell's report states only that he has "evaluated" and "assessed" landfill sites in Plaquemines Parish, "evaluated" a modification of a leachate collection

---

[104] *Id.* at p. 3.

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *Id.* at p. 4.

system in Tangipahoa Parish Landfill, and "surveyed" an Exxon Land Disposal Farm in Mississippi.[110] None of these experiences, T&K claims, includes a single job related to construction services in closing a landfill, the services that T&K provided[111] As such, T&K contends, Newell has failed to lay a proper foundation under *Daubert* and Federal Rule of Evidence 702.[112]

### III. Law and Analysis

Both motions in limine seek to exclude Newell's expert report on similar grounds, namely that: (1) the expert report is procedurally deficient, particularly because it was not timely filed in accordance with the Court's scheduling order; (2) Jefferson Parish has failed to lay an adequate foundation for Newell's qualifications to opine in this matter; and (3) Newell's opinions largely amount to ultimate legal conclusions and contract interpretation rather than proper expert testimony. As such, both motions in limine will be addressed together, except as noted below.

**A.     Excluding Expert Report and Testimony**

*1.     Legal Standard*

Federal Rule of Evidence 702 allows "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if": (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[113]  Prior to the testimony of such an expert at trial, Federal Rule of Civil

---

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *See* FED. R. EVID. 702 (a)-(d).

Procedure 26(a)(2) requires the disclosure of the expert's identity and the preparation of a written report, prepared and signed by the expert, containing "a complete statement of all opinions the witness will express and the basis and reasons for them."[114] District courts have the discretion to exclude expert reports or expert testimony when a party does not comply with the disclosure requirements of Rule 26(a)(2) in preparing an expert report and introducing expert testimony.[115]

In evaluating whether to exercise its discretion to exclude expert testimony, the Fifth Circuit instructs that courts should consider four factors: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice."[116]

### 2.    *Analysis*

#### a.    **Timeliness of Newell's Report**

On January 30, 2015, the Court issued a scheduling order setting a deadline of July 22, 2015 for written reports of Plaintiff's experts to be delivered to Defendant's counsel, and a deadline of August 21, 2015 for Defendants to serve upon Plaintiff's counsel any written reports of experts who may be witnesses for Defendants.[117] There, the Court warned that it would not permit any witnesses

---

[114] FED. R. CIV. P. 26(a)(2)(B)(i).

[115] *See Harmon v. Ga. Gulf Lake Charles, L.L.C.*, 476 F. App'x 31, 36–37 (5th Cir. 2012) (holding that district court did not abuse its discretion in determining that exclusion of an expert's testimony was an appropriate sanction for plaintiffs' failure to comply with rule governing expert reports); *see also Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1367 n.4 (Fed. Cir. 2008) (holding that exclusion and forfeiture are appropriate consequences for attempts to proffer expert testimony without compliance with Rule 26).

[116] *E.E.O.C. v. General Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993).

[117] Rec. Doc. 60.

who did not comply with the order to testify.[118] On July 1, 2015, the Court clarified its scheduling order, noting that written reports for experts testifying to issues involving the assertion of claims by Plaintiff and Plaintiff-in-Counterclaim would be due no later than July 22, 2015, and that reports for experts for issues involving the defense of claims by Defendant and Defendants-in-Counterclaim would be due by August 21, 2015.[119]

Although Jefferson Parish is the Defendant in this matter, it is also a Plaintiff-in-Counterclaim against T&K and Waste Management. T&K, however, has made no counterclaims against the Parish. The Parish argues that Newell's report was timely because his opinions were offered in support of the Parish's defense to Waste Management's claims, and that T&K's role in the matter is inextricably linked to the Parish's defense to Waste Management's Complaint.[120] On its face, however, it appears clear that the Court ordered the delivery of expert reports for witnesses "for issues involving the assertion of claims by . . . Plaintiff-in-Counterclaim" by July 22, 2015, and that the use of Newell's testimony against T&K, who appears in this matter only as a Counter Defendant, falls under the scheduling order.[121]

Waste Management also alleges in its reply brief that the report was not timely filed as it relates to the Parish's claims against the company.[122] Waste Management, unlike T&K, does not extensively brief this argument, offering it in a footnote in a reply brief and briefly addressing the

---

[118] *Id.* at p. 3.

[119] Rec. Doc. 64.

[120] Rec. Doc. 102 at p. 3.

[121] *See* Rec. Doc. 64.

[122] Rec. Doc. 116 at p. 4 n.1.

matter at oral argument.[123] However, Waste Management is correct that Newell's opinions may only be offered in support of Jefferson Parish's defenses, and not in support of its counterclaims, as the scheduling order makes clear that any expert reports supporting affirmative claims by Jefferson Parish acting as a Plaintiff-in-Counterclaim were due by July 22, 2015.

In conclusion, it appears that Jefferson Parish indeed did not file Newell's expert report in a timely manner insofar as his report related to the Parish's affirmative claims against either T&K or Waste Management. To the extent that Newell seeks to testify with regard to Jefferson Parish's defenses against Waste Management, however, his report was timely submitted.

### b. Discretionary Factors for Excluding Expert Testimony

Next, the Court must evaluate whether to exercise its discretion to exclude Newell's testimony insofar as it violated the Court's scheduling order. The Fifth Circuit instructs courts to consider four factors: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice."[124]

First, Jefferson Parish does not argue that Newell's testimony would be vital to its claims against T&K or Waste Management. Indeed, the Parish argues that the testimony does not support any of its claims against either party, but only its defenses to assertions by Waste Management, which inextricably involves certain testimony regarding T&K.[125] In light of the significant limitations on Newell's proposed testimony, *see infra*, the Court further finds that any testimony that

---

[123] *Id.*; Rec. Doc. 120.

[124] *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993).

[125] Rec. Doc. 102 at pp. 4–5.

might be prohibited as untimely is likely not of significant importance to Jefferson Parish.

Second, Jefferson Parish claims that it did not fail to comply with the Court's order, and that in fact Newell's expert report was timely submitted because it speaks only to the Parish's defenses against Waste Management, and by extension any necessary reference to T&K.[126] Because Jefferson Parish does not appear to dispute that the use of Newell's testimony in its case-in-chief against either T&K or Waste Management would be inappropriate, this factor is at best neutral.

Third, T&K argues that Newell's opinions support affirmative allegations and adverse opinions against T&K, and that it would presumably therefore be prejudiced by allowing Newell to testify against it.[127] Waste Management alleges the same, albeit briefly.[128] The Court issued its initial scheduling order on January 30, 2015.[129] Waste Management and Jefferson Parish then submitted a joint motion for clarification on June 29, 2015, in which both parties suggested the Court adopt the language it ultimately did, requiring reports supporting Plaintiff-in-Counterclaim to be submitted by July 22, 2015.[130] Both parties were clearly on notice of the upcoming deadlines and were aware that experts who did not comply with the scheduling order would be barred from testifying at trial.[131] Therefore, to the extent that Newell's opinions support Jefferson Parish's claims against T&K, or any of its counterclaims against Waste Management, the Court finds that the

---

[126] *Id.*

[127] Rec. Doc. 112 at p. 2.

[128] Rec. Doc. 116 at p. 4 n.4.

[129] Rec. Doc. 60.

[130] Rec. Doc. 63.

[131] *See* Rec. Doc. 60.

Counterclaim Defendants would indeed be prejudiced by the untimely submission of Newell's expert report and their inability to rebut or respond through their own expert reports in a timely manner.

Fourth, the Court has rejected the parties' most recent attempt to continue the trial in this case,[132] and trial is scheduled to begin on November 2, 2015. A continuance would not necessarily remedy any potential prejudice, particularly in light of the limited scope of Newell's potential testimony, *see infra*. Therefore, this factor is also neutral, or may weigh slightly in favor of admitting Newell's testimony.

In conclusion, given that the Court finds that Newell's report was not timely submitted to support Jefferson Parish's counterclaims against Waste Management and T&K, and finding that the four factors considered on balance weigh in favor of excluding Newell's testimony insofar as it relates to Jefferson Parish's counterclaims, the Court finds that Newell's testimony may not be admitted against T&K and may not be admitted insofar as he seeks to testify in support of Jefferson Parish's claims against Waste Management.

## B.  *Daubert* Motions

### 1.  *Legal Standard*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[133] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training

---

[132] Rec. Doc. 77.

[133] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[134] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based upon sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the witness [must apply] the principles and methods reliably to the facts of the case.[135]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[136] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance.

First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[137] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[138] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[139]

---

[134] FED. R. EVID. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[135] FED. R. EVID. 702.

[136] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[137] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[138] *See Daubert*, 509 U.S. at 589.

[139] *See id.* at 590.

In *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[140] In *Kumho Tire*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert's* list of specific factors does not necessarily nor exclusively apply to every expert in every case.[141] In addition to the five factors laid out in *Daubert,* a trial court may consider other factors, such as (1) whether the expert's opinion is based on incomplete or inaccurate data; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and (3) whether the expert has adequately accounted for alternative explanations.[142] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[143]

The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[144] The Federal Rules of Evidence define "relevant evidence" as

---

[140] *See id.* at 592–94.

[141] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[142] *See, e.g.*, *Black   v.  Food Lion  Inc.*, 171 F.3d 308, 313 (5th Cir. 1999); *Moore*, 151 F.3d at 278–79 (5th Cir. 1998).

[143] *Kumho Tire*, 526 U.S. at 152.

[144]  *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

"evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[145]

A court's role as a gatekeeper does not replace the traditional adversary system,[146] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[147] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[148] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[149]

### 2.    *Analysis*

Both Waste Management and T&K challenge the sufficiency of the foundation for Newell's opinions. They criticize Newell's qualifications, particularly with regard to his expertise on landfill construction sites, which they allege is utterly lacking.[150] Although Newell's supplemental report lists three landfill sites that he has evaluated or assessed,[151] the parties assert that such minimal experience does not qualify him as an expert in this matter.[152] The parties do not, however, challenge

---

[145] FED. R. EVID. 401.

[146] *See Daubert*, 509 U.S. at 596.

[147] FED. R. EVID. 702 advisory committee's note, "2000 Amendments."

[148] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[149] *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[150] *See* Rec. Doc. 90-1 at pp. 9–10; Rec. Doc. 93-1 at p. 4.

[151] Rec. Doc. 100-1 at p. 4.

[152] Rec. Doc. 116 at p. 5; Rec. Doc. 112 at p. 4.

any particular methodology employed by Newell, theories he employs, or data he considers, except to the extent that they challenge his interpretations of provisions of the Landfill Time Contract.[153]

However, Newell has explained his methodology, which involved a careful review of all of the relevant pleadings and documents provided by the parties, as well as an interview with the Landfill engineer and a visit to the Landfill.[154] Newell's expert report reveals that he has more than 30 years of engineering experience across the fields of sewerage systems, site engineering, land surveying and structural engineering, among others, albeit not seemingly focusing on landfills.[155] Newell may lack expertise on certain questions of landfill construction, but his overall experience suggests that Waste Management and T&K have failed to set forth that any such failing disqualifies Newell's expert report in its entirety.

To reiterate, the Supreme Court held in *Daubert* that cross-examination, the presentation of contrary evidence, and careful instruction on the burden of proof are the traditional means of attacking shaky but admissible evidence.[156] To the extent that T&K and Waste Management cast doubt on Newell's qualifications, the Court finds that such doubts would be best addressed by convincing a finder of fact that Newell opinions are unsupported. The Court finds, however, that Jefferson Parish has laid a sufficient foundation to admit Newell's testimony at trial.

## C.     Legal Conclusions and Contractual Interpretation

### 1.     *Legal Standard*

---

[153] *See infra.*

[154] Rec. Doc. 93-2 at p. 43.

[155] *Id.* at p. 46.

[156] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

Federal Rule of Evidence 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  "The rule was enacted to change the old view that the giving [of] an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[157] The rule, however, does not "open the door to all options."[158] "The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions."[159] "[T]here is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge."[160]

### 2.    *Analysis*

Both Waste Management and T&K seek to exclude Newell's report and testimony, in whole or in part, insofar as it states legal conclusions and interprets the Landfill Time Contract. In *Estate of Sowell v. United States*, the Fifth Circuit explained that expert witnesses may not testify to legal conclusions, stating "if an expert were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position."[161] In *Estate of Sowell*, the Fifth Circuit held that the estate's expert could not opine on whether the estate was "acting reasonably" in failing to pay estate taxes in a timely manner; this was a question reserved to the

---

[157] *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[158] *Id.*

[159] *Id.*

[160] *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (quoting *Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir. 1988)).

[161] *Estate of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir. 1999) (citing *Askanase*, 130 F.3d at 669).

finder of fact.[162] Similarly, in *Askanase v. Fatjo*, the Fifth Circuit upheld the exclusion of an attorney expert who sought to testify about whether the officers and directors in the case had breached their fiduciary duties.[163]

Here, a brief glance at Newell's expert report reveals that a large portion of his statements speak to Waste Management's supposed duties under the Landfill Time Contract, whether the Landfill Engineer acted "reasonabl[y]", whether Waste Management acted improperly, along with other legal conclusions.[164] At oral argument, counsel for Jefferson Parish conceded that at least some of Newell's opinions were legal conclusions, but argued that they could be dealt with on a "case by case" basis. Waste Management, on the other hand, contends that a limiting instruction could not sufficiently exclude Newell's many legal conclusions.[165]

The Court agrees that Newell's expert report is rife with legal conclusions and contractual interpretations. Indeed, Jefferson Parish's defenses of Newell's qualifications include a number of references to his experience in "contract management,"[166] and Newell's supplemental report begins by outlining his experience in "drafting and administering engineering and construction contracts,"[167] experience that seems aimed at justifying his interpretation of contractual provisions. It is possible that once his inadmissible legal conclusions are excised, Newell would have relatively

---

[162] *Id.* at 171–72.

[163] *See Askanase*, 130 F.3d at 699.

[164] *See, e.g.*, Rec. Doc. 93-2 at p. 16.

[165] Rec. Doc. 116 at p. 4.

[166] Rec. Doc. 100 at p. 7; Rec. Doc. 102 at p. 6.

[167] Rec. Doc. 100-1 at p. 1.

little to say at trial. However, the Court finds that although many of the opinions offered in Newell's expert report are inadmissible, Newell also potentially offers testimony on industry norms and practices, and therefore he need not be barred from testifying entirely. For example, while Newell may not testify that "Waste Management . . . had a duty to act as a good faith agent for Jefferson Parish in negotiating change orders,"[168] he *may* testify that "[a]s a national landfill operator, Waste Management should have been aware of the problems that gas could cause in capping work and should have made provisions for it in the plans they developed," if that is his opinion.[169]

In conclusion, although Newell is not wholly barred from testifying, he may not opine on matters of contract interpretation or legal conclusions.

## IV. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Waste Management's "Motion to Exclude Expert Report and Potential Testimony of Frank C. Newell"[170] is **GRANTED IN PART AND DENIED IN PART**. The motion is granted insofar as it seeks to exclude any potential testimony by Newell that would support Jefferson Parish's counterclaims against Waste Management, and denied as to all other parts.

**IT IS FURTHER ORDERED** that T&K's "Motion to Exclude Expert Report of Frank C. Newell and Preclude Expert Testimony of Frank C. Newell Related to T&K's Scope of Work on the

---

[168] Rec. Doc. 93-2 at p. 22.

[169] *Id.*

[170] Rec. Doc. 90.

Jefferson Parish Landfill"[171] is **GRANTED IN PART AND DENIED IN PART**. The motion is granted insofar as it seeks to exclude any potential testimony by Newell that would support Jefferson Parish's claims against T&K, and denied as to all other parts.

**IT IS FURTHER ORDERED** that, should Newell testify at trial, he will be prohibited from opining on matters of contract interpretation or legal conclusions.

**NEW ORLEANS, LOUISIANA**, this  5th  day of October, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[171] Rec. Doc. 93.